**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NATOMA GROUP, L.L.C.,
MICHAEL G. CRONK, DAN
JAMESON AND ANTHONY
CARONCHI,

      CASE NO. 05-CV-70959-DT

   PLAINTIFFS,

      HONORABLE DENISE PAGE HOOD

v.

DERMAL DEFENSE, INC., JAMES
GRAVES, JOHN GRAVES, JOE
SUTHERLAND, TERRY HOWLETT
AND SKINVISIBLE PHARMACEUTICALS,
INC.,

   DEFENDANTS.
_____/

**MEMORANDUM OPINION AND ORDER
AND
NOTICE OF STATUS CONFERENCE**

**I.   INTRODUCTION**

On March 11, 2005, Plaintiffs Natoma Group, LLC ("Natoma"), Michael G. Cronk ("Cronk"), Dan Jameson ("Jameson") and Anthony Caronchi ("Caronchi") filed a complaint against Dermal Defense, Inc. ("DDI"), James Graves, John Graves, Joe Sutherland ("Sutherland"), Terry Howlett ("Howlett") and Skinvisible Pharmaceuticals, Inc. ("SPI") alleging six counts: 1) Violation of Michigan Uniform Securities Act; 2) Fraudulent Misrepresentation; 3) Innocent Misrepresentation; 4) Silent Fraud; 5) Promissory Estoppel; 6) Civil Conspiracy. Upon a stipulated order filed March 14, 2006, Plaintiffs' claims against Defendants DDI, James and John Graves and Joe Sutherland were dismissed, as well as the Counterclaim by these Defendants against Plaintiffs.

1

The remaining defendants are Defendants Howlett and SPI.

Defendants Howlett and SPI filed a Motion to Dismiss, or in the Alternative, For Summary Judgment and Sanctions on April 7, 2005. Plaintiffs filed a brief in opposition to Defendant Howlett's and SPI's motion and a hearing was held on the matter.

Defendants Howlett and SPI claim this Court lacks jurisdiction because no contact between Plaintiffs and these Defendants occurred in the State of Michigan. (Defs. Br. at 10.) Defendants Howlett and SPI also allege Plaintiffs failed to state a cause of action against them in the Complaint. (Defs. Mot. at ¶ 4.)  Defendants Howlett and SPI believe they are entitled to dismissal under FED. R. CIV. P. 12(b)(6) or summary judgment under FED. R. CIV. P. 56. In addition, these Defendants believe they are entitled to the Court's imposition of sanctions upon Plaintiffs under FED. R. CIV. P. 11 because Plaintiffs failed to state a cause of action. (Id. at ¶ 5.)

## II.   STATEMENT OF FACTS

Plaintiffs allege the following facts in their Complaint.  Defendant DDI's sole business has been the marketing and sale of a hand sanitizing product named "Dermal Defense," which is manufactured by Defendant SPI. (Complaint at 3, ¶ 13.) Defendant James Graves owns eighty percent (80%) of Defendant DDI's common stock, which amounts to 80,000 shares. (Id. at ¶ 15.) Defendant James Graves solicited Plaintiffs to invest in DDI offering them shares of his stock in return for their investment. (Id.) Defendant James Graves had conversations with some or all of the Plaintiffs where he made material representations. (Id. at ¶ 16. See also id. ¶ 16 (a)-(g).)

Plaintiff Cronk relied on Defendant James Graves' representations in purchasing stock from him on March, 4, 2004. (Id. at 4, ¶ 17.) Specifically, Plaintiff Cronk paid $250,000 to DDI and was issued 5,000 shares of DDI common stock. (Id.) Defendants DDI and James Graves represented to

Plaintiff Cronk that his shares totaled a five percent (5%) ownership in DDI. (Id.) Plaintiff Jameson also justifiably relied upon Defendant James Graves' representations when he paid $250,000 to DDI for 5,000 shares of DDI common stock amounting to five percent (5%) in DDI. (Id. at ¶ 18.)

Plaintiffs Cronk and Jameson met with Defendants James Graves, John Graves, and Sutherland in Detroit on or about April 6, 2004 ("Detroit Meeting"). (Id. at 4-5, ¶ 19.) At this meeting, Defendant James Graves made or repeated the earlier representations along with new representations about DDI. (Id. See also id. at 5, ¶ 19(a)-(b).)  Defendants John Graves and Sutherland did not object to or correct Defendant James Graves' statements at this meeting. (Id. at ¶ 20.) In addition, Defendant Sutherland prepared and delivered DDI 2003 Financial Statements to Plaintiffs Cronk and Jameson. (Id. See Complaint, Ex. A.) Plaintiff Cronk justifiably relied on the statements made at the Detroit meeting in purchasing an additional $250,000 worth of DDI common stock. (Id. at ¶ 21.)

Plaintiff Caronchi relied upon the representations made by Defendant James Graves in an April 2004 telephone conversation when he paid Defendant James Graves $25,000 for 500 shares of DDI common stock and half percent (.5%) ownership in DDI. (Id. at 5-6, ¶ 22-23. See also id. ¶ 22 (a)-(b).)

On or about September 28 and 29, 2004, Plaintiff Cronk met in Las Vegas, Nevada ("Las Vegas Meeting) with all Defendants except Defendants John Graves and Sutherland. (Id. at 6, ¶ 26.) Defendant Sutherland participated in part of the meeting by telephone. (Id.) This is the first meeting in which Plaintiffs allege Defendants Howlett and SPI participated. (Id.) Defendant Howlett repeated certain representations made previously by Defendant James Graves. (Id. See also id at ¶ 26(a)-(c).) After this meeting and, in reliance upon the representations made during the meeting,

3

Plaintiff Cronk paid DDI an additional $250,000 for 5,000 shares of DDI common stock . (Id. at 7, ¶ 27.)

After their investments, Plaintiffs learned that the representations made by Defendants were false and misleading and that Defendants omitted material facts at the time they were made. (Id. at ¶ 28. See also id. at 7-9 ¶ 28 (a)-(I).)

### III.   ANALYSIS

#### A.   Standard of Review

FED. R. CIV. P. 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986).

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986). A dispute about a material fact is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio*

*Corp.* 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

When the issue of personal jurisdiction is raised, the burden of proof rests upon the party asserting jurisdiction. *Market/Media Research, Inc. v. Union-Tribune Publishing Co.*, 951 F. 2d 102, 104 (6th Cir. 1992). Rule 12(b)(2) provides for motions to dismiss based on personal jurisdiction. FED. R. CIV. P. 12(b)(2). Under Rule 12(b)(2), the Court need only determine whether a plaintiff presented a *prima facie* showing of jurisdiction on the face of the complaint. *Market/Media Research, Inc.*, 951 F. 2d at 104. This may include the pleadings and any affidavits to support any factual allegations. *Id.* Dismissal is warranted only if all the facts Plaintiff asserts "collectively [fail] to state a prima facie case for jurisdiction." *Id.* at 105. A district court is not required to hold an evidentiary hearing when a plaintiff's pleadings and affidavits are insufficient to make a *prima facie* showing of fact supporting the court's assertion of *in personam* jurisdiction. *Id.* at 106.

Since Defendants SPI and Howlett have raised a jurisdictional argument, the Court addresses the jurisdictional issue first.

    **B.**    **Personal Jurisdiction**

Defendants Howlett and SPI argue the Court lacks personal jurisdiction over them. In response, Plaintiffs argue the Court has personal jurisdiction over Defendants Howlett and SPI.

In a diversity of citizenship case, a federal court exercises personal jurisdiction exists where, such jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

Pursuant to the first prong of the personal jurisdictional test, Michigan's long-arm statute provides both "general" and "limited" jurisdiction over nonresident corporations. General personal jurisdiction over corporations exists when:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts or record of this state to exercise general personal jurisdiction over a corporation and to enable such courts to render personal judgments against the corporation: (1) Incorporation under the laws of this state; (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745; (3) The carrying on of a continuous and systematic part of its general business within the state.

MICH. COMP. LAWS. ANN. §600.711. With respect to limited personal jurisdiction over a corporation or its agent, Michigan law provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships: (1) The transaction of any business within the state; (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) The ownership, use, or possession of any real or tangible personal property situated within the state; (4) Contracting to insure any person, property, or risk located within this state at the time of contracting; (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS. § 600.715.

In analyzing Michigan's long-arm statute, Michigan courts have construed the statute to bestow the greatest possible grant of personal jurisdiction consistent with due process. *See Sifers*

*v. Horen,* 385 Mich. 195, 1999 (1971). Where a state's long-arm statute extends to the constitutional limits of the Due Process Clause, the two inquiries merge; courts must only determine whether an assertion of personal jurisdiction over the defendant violates the Due Process Clause. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996).

Based on Supreme Court cases, *Int'l Shoe v. Washington,* 326 U.S. 310, 316 (1945), *Hanson v. Denckla,* 357 U.S. 235, 253 (1958), *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985), and *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980), the Sixth Circuit has set forth a three-part test to determine whether due process requirements have been met :

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) (Known as the *Mohasco* factors set forth in *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).).

A review of the Complaint shows that Defendant SPI, a Nevada corporation, having its principal place of business in Las Vegas, regularly transacts business in Michigan. (Complaint, ¶ 10.)  Plaintiff submitted exhibits showing Defendant SPI's connection with Michigan, including:

- In, a December 15, 2003 press release, SPI advised that its Antimicrobial Hand Sanitizer was "[m]anufactured for and marketed by Michigan based Dermal Defense Inc."
- In a March 30, 2004 SPI press release, SPI announced that DDI "has signed a 'Letter of Intent' (LOI) to acquire the exclusive marketing and distributing rights to its patented Antimicrobial Hand sanitizer product for North America.."  Pursuant to this exclusive marketing and distributorship agreement, SPI shipped a significant quantity of its products to DDI (and invoiced DDI) in Southfield and White Lake, Michigan.
- In a November 16, 2004 SPI press release, SPI announced that DDI had "signed an 'Option Letter' to acquire the exclusive marketing and distribution rights to its patented Antimicrobial Hand Sanitizer product for the remainder of the territory (the

7

> world) not acquired in the Letter of Intent of March 30, 2004 which is the USA, Canada and Mexico."
> - In a February 23, 2005 SPI press release, SPI announced the execution of a "definitive agreement to sell the exclusive North America marketing and distribution rights in North America for its patented antimicrobial hand sanitizer to Dermal Defense, Inc. [sic]."

(Pl. Br. Op., at 10-11; Exs. B-F). Plaintiffs have met the first part of the test in that Defendant SPI, and its agent, Defendant Howlett, purposefully availed themselves of acting within the State of Michigan. The exhibits show that Defendant SPI has a business relationship with DDI in Michigan.

The second requirement, that "the cause of action must arise from the defendant's activities" in Michigan, has also been met. "An action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." *Creech v. Roberts,* 908 F.2d 75, 80 (6th Cir.1990).

The causes of action against Defendants SPI and Howlett include fraudulent misrepresentation, silent fraud and promissory estoppel. The facts alleged in the Complaint are that Plaintiff Cronk met with Defendant Howlett, the President of Defendant SPI, in Las Vegas, Nevada, who made certain representations about Defendant DDI's product. (Complaint, ¶ 26) Plaintiffs claim that they relied upon the representations by Defendant Howlett about Defendant DDI's product, which resulted in Plaintiffs purchasing additional shares of *DDI's* common stock. As noted above, Defendants Howlett and SPI have a business relationship in Michigan. The exhibits submitted by Plaintiffs show that Defendant SPI had a patented Antimicrobial Hand Sanitizer manufactured for and marketed by Michigan based Defendant DDI. (Ex. B) If Defendant SPI had not had a business relationship with Defendant DDI relating to the hand sanitizer, Plaintiff Cronk would not have gone to Las Vegas to meet with Defendant Howlett to learn more about the business opportunities relating to the hand sanitizer. Plaintiffs have shown that the alleged misrepresentations

8

by Defendants SPI and Howlett regarding Defendant DDI's product, are related to Defendants SPI and Howlett's activities in Michigan with Defendant DDI.

Finally, Plaintiffs have alleged sufficient facts to meet the third requirement–that the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Defendant SPI has a contractual relationship with Defendant DDI to manufacture hand sanitizer. Any acts by Defendants SPI or Howlett relating to the hand sanitizer would have consequences in Michigan which would make the exercise of jurisdiction over Defendants SPI and Howlett reasonable. Defendant DDI's business, a Michigan corporation, would be affected.

Based on the above, Plaintiffs have alleged sufficient facts for the Court to exercise personal jurisdiction over Defendants SPI and Howlett without offending the traditional notions of fair play and substantial justice. The Court addresses Defendants SPI and Howlett Motion to Dismiss under Rule 12(b)(6) only since Defendants did not submit any supporting exhibits for summary judgment under Rule 56(c).

    **C.**    **Claims**

        **1.**    **Count I, Violation of Michigan Uniform Securities Act**

Defendants SPI and Howlett seek dismissal of the violation of the Michigan Uniform Securities Act claim against them because they did not offer for sale or sell any stock to Plaintiffs. Plaintiffs did not respond to this argument.

The Complaint alleges Plaintiffs purchased DDI shares of stock. There are no factual allegations in the Complaint that Plaintiffs purchased any stock from Defendants SPI and Howlett. There are also no factual allegations that Defendants SPI and Howlett offered to sell any stock to

9

Plaintiffs. Plaintiffs have failed to state a claim against Defendants SPI and Howlett under the Michigan Uniform Securities Act which requires that they offer for sale or sell stocks. Count I is dismissed against Defendants SPI and Howlett.

### 2.     Count II, Fraudulent Misrepresentation

Defendants SPI and Howlett seek dismissal of the fraudulent misrepresentation claim against them arguing that all the information regarding SPI obtained by Plaintiff Cronk in particular was a matter of public record. Defendants SPI and Howlett argue that because Plaintiff Cronk was already a large stockholder of DDI stock when Plaintiff Cronk met Defendant Howlett in Las Vegas, no fraud was committed by Defendants SPI and Howlett. They claim that Plaintiffs made an unwise investment and that it was Plaintiffs' duty to make a diligent inquiry and review. Defendants SPI and Howlett argue that Plaintiffs did not purchase their stock but purchased DDI stock.

Plaintiffs argue that they have pled sufficient facts to withstand dismissal because they relied upon the statements made by Defendant Howlett at the Las Vegas meeting.

In Michigan, the elements of fraudulent misrepresentation are:

> 1) That defendant made a material representation; 2) that it was false; 3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; 4) that he made it with the intention that it should be acted upon by plaintiff; 5) that plaintiff acted in reliance upon it; and 6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty.

*Hi-Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 335-36 (1976). A material representation must be a statement relating to a past or existing fact. *Id.* at 336. Statements of opinion and "puffing" are not representations of material fact that would give rise to a claim of fraud. *Graham v. Myers,* 333 Mich. 111, 115 (1952).

The Complaint alleges that Defendants Howlett and SPI made repeated representations regarding the hand sanitizing product that: it was unique and superior lasting for four hours without reapplication; it was protected by SPI's patent; large sales of the product were about to consummated; and, there was a substantial market for the product. (Complaint, ¶ 26) These statements could be construed as material representations.

Plaintiffs allege in the Complaint that these statements were false in that the product was not unique and there were several competing hand sanitizing products that have the same characteristics. Plaintiffs claim that Defendant SPI did not own the exclusive patent rights to the product and that at least two other companies held the patents. The statements regarding the sale of the product in that Defendants DDI and SPI had not signed an agreement but rather only had a nonbinding Letter of Intent. (Complaint, ¶ 28)

Plaintiffs allege that Defendants knew these statements were false and were induced to be relied upon by Plaintiffs, which, in fact, were relied upon by Plaintiffs. (Complaint, ¶ 38) Plaintiffs claim they suffered injury as a result of their reliance on Defendants SPI and Howlett's representations. Plaintiffs have sufficiently pled a claim for fraudulent misrepresentation in their Complaint against Defendants SPI and Howlett. This claim, Count II, remains.

### 3. Count III, Innocent Misrepresentation

Defendants SPI and Howlett seek dismissal of Count III arguing that Michigan requires that a plaintiff must be a party to a written contract with the defendant. In response, Plaintiffs agreed to voluntarily dismiss this claim without prejudice.

In Michigan, proof of innocent misrepresentation requires a party to demonstrate that privity of contract existed between it and the party charged. *Eagle Trim, Inc. v. Eagle-Pitcher Ind., Inc.,*

11

205 F. Supp. 2d 746, 755 (E.D. Mich. 2002).  Plaintiffs' innocent misrepresentation claim, Count III, is dismissed with prejudice.

### 4.     Count IV, Silent Fraud

The Plaintiffs are precluded from proceeding with their silent fraud claim as well.  In Michigan, a silent fraud claim requires proof that a defendant was under a legal or equitable duty to disclose and that the defendant failed to speak when the duty so required.  *Sheldon Co. Profit Sharing Plan and Trust v. Smith,* 858 F. Supp. 663, 671 (W.D. Mich. 1994).  There is no allegation in the Complaint that Defendants SPI and Howlett had a duty to make certain disclosures to Plaintiffs regarding the DDI stock which they did not sell or offer to sell to Plaintiffs.  The silent fraud claim, Count IV, is dismissed against Defendants SPI and Howlett.

### 5.     Count V, Promissory Estoppel

Defendants SPI and Howlett argue that the promissory estoppel claim must be dismissed since Defendant SPI gained no benefits based on a promise made to Plaintiffs.  In response, Plaintiffs claim a benefit to Defendant SPI is not a necessary element in establishing a claim for promissory estoppel.

The elements of promissory estoppel are: 1) a promise; 2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; 3) which in fact produced detrimental reliance or forbearance of that nature; 4) in circumstances such that the promise must be enforced if injustice is to be avoided.  *Crest The Uniform Co., Inc. v. Foley,* 806 F.Supp. 164, 169 (E.D. Mich. 1992) (citing *Martin v. East Lansing School Dist.,* 193 Mich. App. 166, 178 (1992)).  A promise must be definite and clear.  *Crest,* 806 F.Supp. at 169.  Application of the doctrine of promissory estoppel is based on the particular factual

circumstances of a case and, as an equitable remedy, is employed to alleviate an injustice resulting from strict adherence to established legal principles, such as those underlying the statute of frauds. *Id.* In order to establish a claim for promissory estoppel, Plaintiff must first show a promise was made. See *Novak v. Nationwide Mutual Ins. Co.,* 235 Mich. App. 675, 687 (1999). The doctrine of promissory estoppel is cautiously applied. *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich.App. 438 (1993). A statement such that, "as long as he was profitable and doing the job" an agreement will not be terminated does not constitute a "definite and clear" promise of just-cause employment. *Barber v. SMH, Inc.,* 202 Mich. App. 366, 375-76 (1993). The doctrine of estoppel should be applied only where the facts are unquestionable and the wrong to be prevented undoubted. *Id.* at 376. Promissory estoppel, although an equitable claim, is not grounded in tort but is an alternative to an express contract and, is, therefore, grounded in contract law. Michigan law provides that "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996); *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934 939 (6th Cir. 1989)(promissory estoppel is a quasi-contractual theory and parties who have entered into an express contract cannot seek recovery based on this quasi-contractual theory); *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D. Mich. 1993)(promissory estoppel is an alternative theory of recovery where no contract exists, thus, if a contract exists, an implied contract theory, such as promissory estoppel, will not lie).

"A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a[n] ... understanding that a commitment has been made." *State Bank of Standish v. Curry,* 442 Mich. 76, 85 (1993). Promises must be distinguished from statements of

opinion, predictions of future events, or expressions of a party's will, wish, or desire for something to happen. *Id.* at 89. Promissory estoppel only is allowed in a contract setting where one party contests the existence of a contract. *Aetna Ca. & Sur. Co. v. Dow Chem. Co.,* 883 F.Supp. 1101, 1111 (E.D. Mich.1995)(citing *Campbell v. Troy,* 42 Mich.App. 534, 537 (1972)). This is because promissory estoppel is an alternative theory of recovery where no contract exists, and, thus, acts as a substitute for consideration. *Id.* (citing *Huhtala v. Travelers Insurance Co.,* 401 Mich. 118, 133, 257 N.W.2d 640 (1977)).

Promissory estoppel will not lie in this instance. Plaintiffs do not allege in the Complaint that they have any sort of contract or agreement with Defendants SPI and Howlett. Plaintiffs are unable to establish the first element that Defendants SPI and Howlett made a "promise" to Plaintiffs regarding the sale of DDI stock. The statements attributable to Defendants SPI and Howlett are merely descriptive representations about the hand sanitizing product. Defendants SPI and Howlett made no promise to act in any way nor made any commitment to Plaintiffs in order to support an alternative theory of a contract or agreement between Plaintiffs and Defendants SPI and Howlett. The promissory estoppel claim is dismissed.

### 6.     Count VI, Civil Conspiracy

Defendants SPI and Howlett seek dismissal of the civil conspiracy claim against them because Plaintiffs' Complaint lacks sufficient factual basis for such a claim. Plaintiffs did not respond to this argument.

To prove civil conspiracy, a plaintiff must prove "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Feahany v. Caldwell*, 175 Mich. App. 291 (1989) (citing

*Temborious v. Slatkin*, 157 Mich. App. 587 (1986).

Plaintiffs have not alleged any unlawful or criminal conduct engaged in by Defendants SPI and Howlett. Plaintiffs' civil conspiracy claim must be dismissed against Defendants SPI and Howlett.

**D.  Sanctions**

In their motion, Defendants Howlett and SPI seek Rule 11 sanctions against Plaintiffs for brining this lawsuit against these Defendants and in the State of Michigan. In response, Plaintiffs claim Defendants Howlett and SPI failed to follow the requirements of Rule 11. Plaintiffs further argue that the relief sought is without merit.

Rule 11 of the Rules of Civil Procedure provides that prior to requesting or filing a motion for sanctions under this rule, the party must file a separate motion from other motions regarding the requested sanctions and the motion must not be filed unless first served upon the opposing party 21-days prior to the filing of the motion. Fed. R. Civ. P. 11(c)(1)(A). Failure to comply with this provision warrants denial of the request. *First Bank of Marietta v. Hartford Underwriters,* 307 F.3d 501 (6th Cir. 2002). Defendants Howlett and SPI did not file a separate motion for sanctions nor was the motion served to Plaintiffs under the safe harbor provision of Rule 11. In any event, the Court, having denied these Defendants' Motion to Dismiss based on lack of personal jurisdiction, Defendants' request for sanctions must be denied on the merits as well as on the failure to follow the provisions of Rule 11(c).

**IV.  CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendants Howlett and SPI's Motion to Dismiss, or in the Alternative, for Summary Judgment and Sanctions **(Docket No. 7, filed April 7, 2005)** is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Counts I (Michigan Uniform Securities Act), III (Innocent Misrepresentation), IV (Silent Fraud), V (Promissory Estoppel) and VI (Civil Conspiracy) are DISMISSED against Defendants Howlett and SPI with prejudice.  Count II, Fraudulent Misrepresentation, remains.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Show Cause Order, Sanctions and Protective Order **(Docket No. 40, filed October 19, 2005)** is MOOT, the parties to the motion having resolved the case between them.

IT IS FURTHER ORDERED that a Status Conference with the remaining parties be held on **May 15, 2006, 4:15 p.m.**

 /s/   DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: March 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager

16